**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| **UNITED SPECIALTY INSURANCE COMPANY,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **3:23-cv-00049-TES** |
| **ALRA LOGISTICS, LLC; XAVIER GERARD DOWNER; and JAMELA SMITH,** | |
| *Defendants.* | |

## ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION

United Specialty Insurance Company ("United Specialty") has asked the Court to reconsider its summary-judgment ruling in the above-captioned case based on what it packages as seven enumerations of error.[1] [Doc. 32, pp. 2–6].

### A.    Legal Standard

Motions for reconsideration are not to be filed as a matter of routine practice. LR 7.6, MDGa. However, such motions are appropriate if the party seeking reconsideration demonstrates that "(1) there has been an intervening change in the law, (2) new

---

[1] United Specialty meticulously outlined its take on the Court's alleged errors by providing detailed analyses regarding what it considers to be the many mistakes that led to a ruling essentially granting summary judgment to Defendant Jamela Smith. Despite the clear opportunity to respond offered by the Court's Local Rules, Ms. Smith decided to sit this one out and offered nothing to rebut United Specialty's arguments. [Doc. 33].

evidence has been discovered that was not previously available to the parties at the time the original order was entered, or (3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice." *Bryant v. Walker*, No. 5:10-CV-84, 2010 WL 2687590, at *1 (M.D. Ga. July 1, 2010) (quoting *Wallace v. Ga. Dep't of Transp.*, No 7:04-cv-78, 2006 WL 1582409, at *2 (M.D. Ga. June 6, 2006)). "An error is 'manifest' if it is 'clear and obvious'"—"the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Durden v. State Farm Fire & Cas. Co.*, No. 1:15-CV-3971-WSD, 2017 WL 3723118, at *6 (N.D. Ga. Aug. 29, 2017) (first quoting *United States v. Battle*, 272 F. Supp. 2d 1354, 1358 (N.D. Ga. 2003); and then citing *Benton v. Burke*, No. 11-cv-493, 2012 WL 1746122, at *1 (N.D. Ala. May 16, 2012)). Where a ruling is "at least arguable," the error is not "clear and obvious." *Id.* (quoting *Battle*, 272 F. Supp. 2d at 1358).

Even though a motion for reconsideration may not be used to relitigate old matters or reargue settled issues, the Court realizes the virtually impossible task of confronting an erroneous application of law without making some of the same arguments. *See Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012). In any event, however, parties may never use a motion for reconsideration just to show the court how it "could have done it better." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003) (citation omitted). In other words, a party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to

test whether the Court will change its mind." *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000). Finally, it is improper to use a motion for reconsideration to ask the Court to rethink what it has "already thought through—rightly or wrongly." *Godby v. Electrolux Corp.*, Nos. 1:93-cv-353-ODE, 1:93-cv-126-ODE, 1994 WL 470220, at *1 (N.D. Ga. May 25, 1994) (citation omitted).

**B.**    **Motion for Reconsideration**

Through arguments that could have been included in its briefs supporting its summary-judgment efforts or articulated more clearly, for the most part, United Specialty has done nothing more than seek reconsideration just to tell the Court how it could have done better. The essence of this case is really quite simple.

Under Georgia law, an insurance company's duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy. *See Fireman's Fund Ins. Co. v. Univ. of Ga. Ath. Ass'n*, 654 S.E.2d 207, 209 (Ga. Ct. App. 2007). While United Specialty made it quite clear how much it disagreed with the Court's decision, the Court continues to be bound by Georgia law when it comes to whether United Specialty has a duty to defend Defendant Alra Logistics, LLC ("Alra Logistics") in the underlying lawsuit. Here, the allegations of the underlying complaint—when set against the provisions of the policy—did not unambiguously rule out the potential for a duty to defend. *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997). So, when there is any ambiguity as to an insurance company's duty to defend—

the insurance company has to provide a defense. That's the law, and that's why the Court ruled the way it did.

It's exceedingly clear that United Specialty doesn't agree (or like) the fact that the Court found the allegations of the underlying complaint to be ambiguous or incomplete. *See id.* Its considerable disagreement with the Court's ruling, however, provides no basis for the Court to reconsider its decision. We have appellate courts for that.

If United Specialty didn't notice the ambiguity or lack of completeness from the allegations of the underlying complaint, that doesn't mean that the Court gets to overlook those issues in direct contravention of Georgia law. If United Specialty *did* notice either the ambiguity or the incompleteness of the allegations but failed to move for a more definite statement under O.C.G.A. § 9-11-12(e) before filing this declaratory-judgment action—that's a decision it will have to live with. For whatever reason, despite a full discovery period, the record for this declaratory-judgment action was not nearly as developed as it could have been. *See, e.g.*, [Doc. 8]. Too many pieces of the puzzle were missing for the Court to declare that United Specialty doesn't owe its insured any defense at all in the underlying lawsuit. The Court would buy United Specialty's argument that it doesn't have a duty to defend if the facts were as clear as it says they are and—understandably—wants them to be. They're not, however, anywhere near that clear.

4

1.      **The MCS-90 Endorsement**

First, United Specialty argues that "the Court erred in holding that United Specialty has a duty to defend based on the MCS-90 [Form]." [Doc. 32, p. 2]. This argument either misunderstands or deliberately misrepresents the Court's actual holding regarding United Specialty's duty to defend Alra Logistics. As to that overarching issue, the Court held that United Specialty had such a duty only because the allegations in the underlying complaint presented doubt. That's it.[2]

The Court's lengthy discussion about the lack of telling or critical evidence in this case and how that presented numerous factual scenarios which could ultimately trigger the MCS-90 Form included in the policy was nothing more than an opportunity to point out just how much is unknown, uncertain, unresolved, or still up in the air with respect to what happened in the underlying lawsuit. During the discovery phase of its own declaratory-judgment action, United Specialty had every opportunity to depose an appropriate representative from Alra Logistics to procure relevant testimony that could reveal, at the very least, *what* was inside the Enterprise box truck being driven by Defendant Xavier Gerard Downer ("Downer") and to *whom* those items belonged. *See*

---

[2] What United Specialty keeps missing from the Court's ruling is that we don't know who may ultimately be liable to Ms. Smith because of the ambiguous, incomplete, and somewhat contradictory allegations in the underlying complaint surrounding the incident. That's all the Court's trying to say. Since the allegations of the underlying complaint are ambiguous, United Specialty, as an insurance company must defend. *Penn-Am. Ins.*, 490 S.E.2d at 376. To be sure, the Court could have stopped its discussion at that point—making for a much shorter opinion—but in trying to address all the arguments presented by United Specialty and Ms. Smith (i.e., the MSC-90 Form, the Georgia Motor Carrier Act, etc.), it continued.

[Doc. 30, pp. 46–51 (discussing whether Alra Logistics can meet the statutory definition of "for hire" under O.C.G.A. § 40-1-100(8) and by extension rely on the Georgia Motor Carrier Act to wipe out various provisions United Specialty relies upon to exclude coverage)]. But, that obviously wasn't the tack that United Specialty took, and if it was, no such deposition ever made it into the record.

Although assuredly easy to obtain, those answers go directly to the Court's overall point that too much ambiguity exists within the allegations of the underlying complaint to definitively rule out the duty to defend. A cursory glance at Ms. Smith's underlying complaint ought to be enough to highlight certain factual allegations and cause United Specialty—for purposes of this lawsuit—to ferret out whether those hold water so it could adequately argue against having to provide a defense to Alra Logistics. [Doc. 1-1, ¶¶ 8–9, 14]. United Specialty focused its arguments elsewhere, causing it to either overlook the actual words that comprised Ms. Smith's allegations from the underlying complaint or assume (incorrectly) that those words unambiguously ruled out any prospect of coverage. *Penn-Am. Ins.*, 490 S.E.2d at 376.

Via this declaratory-judgment action, United Specialty called upon the Court to resolve the issue of its duty to defend. When the Court resolved that global issue, its holding hinged solely on the ambiguity or the incompleteness of the allegations from the underlying complaint in accordance with *Penn-America Insurance*—not the language of the MCS-90 endorsement. 490 S.E.2d at 376. All the Court said was that based on "the

inferences that can be drawn from the facts and evidence on this record," "*there is a potential* for a claim to come within the policy." [Doc. 30, p. 46 (emphasis added)]. Thus, a declaration that United Specialty didn't have a duty to defend wasn't warranted. [*Id.*]. Any ancillary discussions about the MCS-90 endorsement only followed to show the possible implications it could have on a judgment rendered in the underlying lawsuit against Alra Logistics.

Once more, "insurance companies are 'obligated to defend where . . . the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage.'" [Doc. 30, p. 13 quoting (*Penn-Am. Ins.*, 490 S.E.2d at 376)]. For United Specialty to shed its duty-to-defend obligation, which, under Georgia law is "extremely broad," the underlying complaint "must unambiguously exclude coverage under the policy." [*Id.*]; *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 941 (11th Cir. 2023). Ms. Smith's complaint from the underlying lawsuit didn't do that.[3]

Where "the facts as alleged in the complaint *even arguably* bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *Landmark Am. Ins. Co. v. Khan*, 705 S.E.2d 707, 710 (Ga. Ct. App. 2011) (emphasis added). So, as the

---

[3] Even if United Specialty took a deposition and obtained the relevant testimony and answers that would plug the factual holes in this case, a strict or proper application of what is required by *Penn-America Insurance* may not have had any effect on the Court's duty-to-defend analysis or subsequent holding. The *allegations* from the underlying complaint when it comes to the issue of whether an occurrence may be within a policy's coverage are *all-important*.

Court addressed in its summary-judgment ruling, the plethora of scenarios that underlie this case because of the incompleteness or ambiguous nature of the allegations from the underlying complaint "arguably bring the occurrence" under the policy and solidify United Specialty's duty to defend—even if those allegations are ultimately found to be groundless.[4] *Id.*; *Penn-Am. Ins.*, 490 S.E.2d at 376; [Doc. 30, pp. 36–46]; *see also* [Doc. 30, p. 49 (discussing [Doc. 1-1, ¶ 8])].

  **2.**  ***Sapp v. Canal Insurance Co.***

  Second, United Specialty says that the Court erred when—based on *Sapp v. Canal Insurance Co.*, 706 S.E.2d 644 (Ga. 2011)—it concluded that the Georgia Motor Carrier Act "could apply" in this case. [Doc. 32, p. 3]. *Sapp* undoubtedly aided the Court in its decision, here. Nevertheless, United Specialty takes considerable issue with the Court's reliance on *Sapp,* arguing that the Court reformed a noncompliant insurance policy into compliance with the Georgia Motor Carrier Act. [*Id.*]. How in the world was the policy in this case noncompliant when it included motor carrier paperwork? Interestingly, and without a shred of evidence to support this, United Specialty wants the Court to find that it "did not know or have reason to know" that Alra Logistics "was engaged in practices qualifying it as a motor carrier for hire under Georgia law." [*Id.* (citing *Benton*

---

[4] Notwithstanding the clear obligation to defend, that doesn't mean that United Specialty will ultimately be liable for any judgment, and that is especially true if a jury finds that Downer was not driving the Enterprise box truck on behalf of Alra Logistics or was outside the scope or course of his employment. *Penn-Am. Ins.*, 490 S.E.2d at 376–77.

*v. Zurich Am. Ins. Co.*, No. 1:16-CV-02932-LMM, 2019 WL 12518371, at *12 (N.D. Ga.

May 22, 2019))]; *see generally* [Doc. 28-2, Greenburg Aff.].

As discussed at length in the Court's summary-judgment order, both the

insurance application and the policy include sufficient information "to determine that

motor carrier filings were needed." *Benton*, 2019 WL 12518371, at *12. Information about

box trucks being housed and used outside of Alra Logistics' main state of operations in

Pennsylvania "was . . . disclosed in the initial application." *But see id.* Most telling,

though, the insurance policy *included an MSC-90 Form*! It's hard to imagine what other

information United Specialty would need on top of a form entitled "Endorsement for

Motor Carrier Policies of Insurance of Public Liability [U]nder Sections 29 and 30 of the

Motor Carrier Act of 1980" to realize its insured WAS A MOTOR CARRIER. [Doc. 28-2,

p. 47]. And, the inclusion of additional insureds *in the policy* from states like Indiana and

Georgia are undoubtedly enough to inform United Specialty that Alra Logistics, as a

company that transports goods, may be conducting interstate business and might

"qualify[] . . . as a motor carrier for hire under Georgia law." [*Id.* at pp. 32, 25]; [Doc. 32,

p. 3]; *see also Sapp*, 706 S.E.2d at 648.

Still, that didn't stop United Specialty from arguing that "the equitable principles

that justified reformation in *Sapp*" don't apply in this case. [Doc. 32, p. 3]. To a very

small extent, that's kind of true because unlike (*Sapp* and *Benton*) there isn't anything for

the Court to twist or "reform" in this case for Alra Logistics to be properly insured as a

motor carrier. The policy *had* the requisite motor carrier paperwork, and United Specialty knew exactly what type of business it insured. *See, e.g.*, [Doc. 28-4, ¶ 1 (noting the existence of an effective insurance policy)]. What *Sapp* did do for this case, though, is provide excellent guidance for the Court's conclusion that United Specialty can't wiggle out of its duty to defend under some "Oh, we didn't even know Alra was a motor carrier" excuse. *See* [Doc. 27, p. 7 (United Specialty arguing that Ms. Smith "did not allege [that] the subject vehicle [was being used] to transport goods [or] property for hire")]; *in connection with* [Doc. 1-1, ¶ 8 (alleging that there were "goods contained" inside the truck being driven by Downer who was employed by Alra Logistics)]; *and* [Doc. 30, pp. 46–51 (discussing same)].

On its characterization of *Sapp*, however, United Specialty's right: that case was heavily fact-bound. [Doc. 32, p. 3]. As was *Benton*. 2019 WL 12518371, at *10 (noting that the *Sapp* "decision was heavily fact-bound"). But, *Benton* contains one notable fact that's not in this case. Nowhere in this record is there any evidence that Alra Logistics "went to great lengths to hide [its] practices from its insurer and to avoid having to pay for a motor carrier policy." *Benton*, 2019 12518371, at *12. It clearly paid for a motor carrier policy.

To the extent it's still not clear, the incompleteness and uncertainties that permeate this case are what led the Court to rule that the Georgia Motor Carrier Act "very well *could*" apply in this case—not "does"—but could. [Doc. 30, p. 50 (emphasis

added)]. The Court easily concedes that, in hindsight, it would have saved itself much time, energy, and work had it simply not tried to more completely explain how and why the ambiguous allegations in the underlying complaint prevented it from determining that United Specialty has no duty to defend. Most notably, the vast majority of United Specialty's criticisms don't even have anything to do with the Court's actual holding: the correct application of Georgia law doesn't support United Specialty's insistence that it has no legal duty to provide its insured with a defense. When it comes to the Court's own realization of the ambiguous or incomplete allegations displayed by the underlying complaint, United Specialty didn't fault the Court or seek reconsideration of that ultimate holding. *See Penn-Am. Ins.*, 490 S.E.2d at 376. Again, based on the allegations in the underlying complaint and as addressed by the Court on summary judgment, it's exceedingly unclear whether the MSC-90 endorsement is applicable, whether the Georgia Motor Carrier Act applies, or—and everything hinges on this—whether Downer was even acting in the course and scope of his employment at the time of the incident, as alleged.[5] [Doc. 1-1, ¶¶ 8–9, 14]. But, the

---

[5] Regarding the MSC-90 endorsement, we don't know whether Downer was engaged on a purely intrastate trip to prevent its possible applicability. *See* [Doc. 30, p. 47 n.10]. The reasons for this were discussed in detail in the Court's summary-judgment order. [*Id.* at pp. 41–46]. If Downer's trip was purely intrastate, then, as United Specialty argued, the MCS-90 endorsement will not apply. [*Id.*]; [Doc. 27, p. 3 (quoting *Grange Indem. Ins. Co. v. Burns*, 788 S.E.2d 138, 144–45 (Ga. Ct. App. 2016))]. If his trip was purely intrastate, and if the Georgia Motor Carrier Act applies, then the Georgia Supreme Court's guidance will chip away at the exclusions United Specialty relies upon in its efforts to avoid coverage in this case. *See Sapp*, 706 S.E.2d at 649 ("*any provisions* in the insurance policy issued . . . that would serve to reduce or negate [an insurer's] obligations to the motoring public under the Act are void and of no effect[]") (emphasis added). Put succinctly, if Downer was in the course and scope of his employment, as Ms. Smith alleged, and he was traveling *intrastate*, then *Sapp* and the Georgia Motor Carrier Act will

murkiness presented by the underlying complaint's allegations for that third issue means one simple thing—that it's "*arguabl[e]*" that the occurrence from the underlying lawsuit comes within the policy's coverage. *Landmark Am. Ins.*, 705 S.E.2d at 710. Ergo, "the insurer has a duty to defend the action." *Id.*

As to the Georgia Motor Carrier Act, let's recap. We know that Ms. Smith alleged that Downer "was driving a truck on behalf of his employer," Alra Logistics, and acted "within the scope and course of his employment." [*Id.* at ¶¶ 8, 14]. We know that Alra Logistics, via its response to Ms. Smith's requests for admissions, denied both of those allegations, but Georgia law doesn't say that you get to look at the allegations from an underlying complaint *plus* responses to requests for admission. [Doc. 27-2, pp. 4–5]. It's only a comparison of "the allegations of the complaint with the provisions of the policy" that frames an insurer's duty to defend. *Fireman's Fund Ins.*, 654 S.E.2d at 209; *Penn-Am. Ins.*, 490 S.E.2d at 376. Even recognizing those opposing narratives, we really don't know *for a fact* whether Downer was or wasn't driving on behalf of Alra Logistics in the course and scope of his employment. That factual ambiguity prevents any definitive, summary-judgment based finding, *see* Fed. R. Civ. P. 56(a), that could rule out the possibility that Downer and Alra Logistics *were not* engaged in activities that could hale the Georgia Motor Carrier Act front and center. Additionally, the underlying

---

apply. *See* [Doc. 27, p. 5]. If Downer was in the course and scope of his employment, as Ms. Smith alleged, and he was embarking on an *interstate* trip, then the MCS-90 Form will apply. One or the other *may* apply, but not both. *See* [*id.* at p. 6].

complaint mentions that the Enterprise box truck that Downer drove contained goods "therein belonging to" Alra Logistics. [Doc. 1-1, ¶ 8]. This points to yet another wrinkle to show that there may be some underlying factual dispute as to whether Alra Logistics can be defined as a motor carrier for Downer's trip the morning of July 24, 2021. [Doc. 30, pp. 49–50].

By now, it should be plain that United Specialty, on this record, did not meet its burden of showing "that there is no genuine dispute as to any material fact" that would preclude its defensive obligations to Alra Logistics. Fed. R. Civ. P. 56(a). To be sure, had United Specialty done more to demonstrate that Downer wasn't driving the Enterprise box truck on behalf of Alra Logistics or was outside the scope and course of his employment (to *show* that there could be no genuine dispute as to *that* material fact), the Court can't even say that its ruling—when it comes to United Specialty's duty to defend—would have been any different.

> The true rule is that the duty to defend is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy; *even if groundless*, the allegations of *the complaint* [against the insured] are looked [at] to determine whether a liability covered by the policy *is asserted*.

*Penn-Am. Ins.*, 490 S.E.2d at 376 (first and second emphasis added). Judgment as a matter of law on United Specialty's duty to defend was simply not appropriate based on the allegations of the underlying complaint. The Court doesn't know how else to say it. Whether it was luck or strategy from Ms. Smith in drafting the underlying complaint,

its ambiguous language should have been enough to show that her allegations could arguably bring what happened to her on July 24, 2021, within Alra Logistics' insurance policy. *Penn-Am. Ins.*, 490 S.E.2d at 376; *Landmark Am.*, 705 S.E.2d at 710.

**3.    The Georgia Motor Carrier Act**

Third, United Specialty contends that "the Court erred in holding that United Specialty has a duty to defend based on the [Georgia Motor Carrier] Act." [Doc. 32, p. 4]. Again, like the MCS-90 Form, the Court did not hold that the duty to defend arises directly from the Georgia Motor Carrier Act—just that there are certain protections that may be in play should it become applicable to Ms. Smith's recovery. The Court's discussion of the Georgia Motor Carrier Act was included mainly because of the parties' arguments on the topic and to shed light on the fact that so much is unknown in this case.

As United Specialty contends on reconsideration, the purpose of motor-carrier insurance

> 'is not for the benefit of the insured [motor common carrier] but for the sole benefit of those who may have a cause of action for damages for the negligence of the motor common carrier,' making the insurance policy 'in the nature of a substitute surety bond [which] creates liability in the insurer regardless of the insured's breach of the conditions of the policy.'

[Doc. 32, p. 4 (quoting *Ross v. Stephens*, 496 S.E.2d 705, 707 (Ga. 1998))]. From that, it's clear that United Specialty understands why the Court discussed the Georgia Motor Carrier Act.

4.    **Consideration of Deposition Testimony and United Specialty's Reservation of Rights Letter**

Fourth, United Specialty argues that "with respect to whether Downer is an 'insured,' the Court erred in considering two pieces of extrinsic evidence": the deposition testimony from the underlying lawsuit of Alra Logistics' representative Marc Kleyman and United Specialty's reservation of rights letter referencing "permissive user" language. [Doc. 32, pp. 4–5].

Remarkably, United Specialty relied on not one, but two filings from the underlying lawsuit to support its summary-judgment efforts. *See, e.g.*, [Doc. 27-1]; [Doc. 27-2]. Yet, somehow, it quibbles with the Court's reading and consideration of Mr. Kleyman's deposition as well as the reservation of rights letter—United Specialty's *own document* which, by the way, United Specialty put into the record when it initiated this declaratory-judgment action. [Doc. 32, pp. 4–5]. And, if that weren't enough, United Specialty even *used* and *relied upon* the exact same reservation of rights letter in obtaining default judgments as to the factual allegations in its Complaint [Doc. 1] against Alra Logistics and Downer. [Doc. 15-1, p. 5 ¶16]; [Doc. 20-1, p. 5 ¶ 16]. Astoundingly, with regard to the default judgments entered in this case "as to the [f]actual [a]llegations of the Complaint," United Specialty even wanted it "deemed" an admitted fact that the underlying complaint "*alleges* that Alra [Logistics] is responsible for . . . Downer's actions under a theory of respondeat superior, agency, or apparent agency" and that it "*alleges* that, during the subject accident, . . . Downer was an

employee of Alra [Logistics] who was acting within the scope of his employment by, and agency, for, Alra [Logistics]." [Doc. 15-1, p. 4 ¶ 14 (emphasis added)]; [Doc. 20-1, pp. 4–5 ¶ 14 (emphasis added)]; *see also* [Doc. 16, p. 2 ¶ 14 (emphasis added)]; [Doc. 21, p. 2 ¶ 14 (emphasis added)]. That is enough to resolve the duty-to-defend inquiry, and for United Specialty to argue that it can rely on a document it put into the record—but the Court can't—is just bewildering.

United Specialty conveniently ignores that Federal Rule of Civil Procedure 56(c)(3) speaks to a court's ability to consider not only "cited materials," but "other materials" also placed onto the record—even (especially) those documents that a plaintiff attached to its complaint as an exhibit. Fed. R. Civ. P. 56(c)(3). Although United Specialty didn't cite directly to or rely on Mr. Kleyman's deposition, Ms. Smith certainly did, and if United Specialty didn't like what was in it, United Specialty could've made some effort to rebut it. *See, e.g.*, [Doc. 24, p. 3]; [Doc. 24-15, pp. 2, 4–5]; *see also* [Doc. 30, p. 4 (noting that the testimony Mr. Kleyman offered was "unrebutted" by United Specialty on this record)]. But again, United Specialty took little strides in making this record as developed as it could have. *See* [Doc. 30, p. 9 n.5]. And because United Specialty did so little to aid in that endeavor, the Court had to look at every single filing in this record to grasp and understand the actual issues before it.

That said, United Specialty isn't wrong in its position that "the information contained in those extrinsic documents does not place the claim within coverage[.]"

[Doc. 27, p. 2]. What was contained in those documents wasn't what led the Court to rule that United Specialty had a duty to defend—the allegations from the underlying complaint led to that ruling. *Penn-Am. Ins.*, 490 S.E.2d at 376. Those extrinsic documents may have certainly led and contributed to the Court's extensive discussions regarding, *inter alia*, the MCS-90 Form, *Sapp*, and the Georgia Motor Carrier Act, but none of them had anything to do with the Court's ultimate ruling on the duty to defend.

United Specialty also argues that Downer, even as a "permissive user" is not an insured entitled to a defense under the policy. [Doc. 32, p. 5]. On this, based on the policy's plain language, the Court would have agreed with United Specialty at the outset had it just forewent its "even if" argument that Downer's failure to cooperate with certain policy terms caused him to breach the policy just like an "insured." *See* [Doc. 28-1, pp. 12–14]. If Downer isn't an insured or an "other involved 'insured,'" how can he be bound and thus subject to breaching the policy's provisions that concern an "*insured's*" duty to cooperate? *See, e.g.*, [Doc. 28-2, p. 22]. You can't say that an individual is not an insured on the one hand, and then, on the other hand, harp at him for not complying with something that only an insured has to comply with. That doesn't make any sense.

Further, to the extent United Specialty's contention that Downer must qualify as an insured for there to even be "the possibility of coverage" for Alra Logistics is simply not true for this case. [Doc. 28-1, p. 12]. Until the issue as to whether Downer was

"driving a truck on behalf of his employer" or was "within the scope and course of his employment" is properly and factually ironed out, United Specialty cannot leave its insured defenseless in the underlying lawsuit. *See* [Doc. 30, pp. 28–31]. No one disputes that "Downer was the driver of the vehicle involved in the subject accident," and, according to a document that *United Specialty* placed onto the record, Downer "was [an] employee of" Alra Logistics.[6] [Doc. 28-4, ¶ 18 (citing [Doc. 1-1, ¶ 8])]; [Doc. 27-2, p. 4]. Easily enough because of Downer's employment and the ever-looming pivotal facts that have evaded not only this record but the underlying complaint's allegations, the Court suggested that "United Specialty has done exactly what it's supposed to do" under Georgia law. [Doc. 30, p. 35]. Candidly, the Court did not specifically cite to *Richmond v. Georgia Farm Bureau Mutual Insurance Co.* in its summary-judgment order, but it certainly recognized its premise. 231 S.E.2d 245, 247 (Ga. 1976); *see* [Doc. 30, p. 35]. "Georgia courts have encouraged insurers to take the "proper and safe course of action," which "is to enter upon a defense under a reservation of rights and then proceed to seek declaratory judgment in its favor." *Richmond*, 231 S.E.2d at 247. United Specialty did just that, but on this record, "the facts as alleged in the complaint" when it comes to Alra Logistics "*arguably* br[ought] the occurrence within the policy's coverage[.]" *Landmark Am. Ins.*, 705 S.E.2d at 710.

---

[6] Of course, Alra Logistics states in the underlying lawsuit that "[a]t the time of the incident . . . Downer was not in the course and scope of his employment and did not have the employer['] s permission to be operating the vehicle involved in the incident." [Doc. 27-2, p. 4]. A jury will have to sort that out.

But, does United Specialty have a duty to defend a "permissive user"—someone who the policy explicitly excludes as an "insured"? [Doc. 28-2, p. 16]. No. When it comes to Downer, United Specialty owes him no defense. Such an about-face, however, does not mean that this record or the underlying complaint allows United Specialty to avoid "any potential coverage" for Alra Logistics that "would be reduced to the statutory minimums." [Doc. 30, p. 30 (quoting [Doc. 1-2, p. 4])]. That can only be avoided by finding the answer to one question: Did Downer "driv[e] [the Enterprise box] truck on behalf of his employer" and "within the scope and course of his employment" on July 24, 2021? [Doc. 1-1, ¶¶ 1, 7–8, 14]. That is an excellent question for a Clarke County jury, seeing as United Specialty only sought a declaration regarding its rights and obligations for the underlying lawsuit. [Doc. 1, p. 7]. If the jury's answer to that question is "No," then, United Specialty will know what it has to do—nothing. Under Georgia law, though, the allegations of the underlying complaint simply do not give it the swift and quick exit it desires.

### 5.    The "Unlisted Driver" Exclusion and the "Radius Exclusion"[7]

Fifth, United Specialty says that the Court committed error by failing to consider whether the two exclusions precluded coverage for Alra Logistics and Downer under the policy itself. [Doc. 32, p. 5]. To this point, when it comes to Alra Logistics, the Court

---

[7] United Specialty's sixth and seventh enumerations of error: prejudice because of Downer's failure to cooperate and the possible "reading out" of the exclusions it relies upon in its efforts to avoid coverage in this case have been addressed and warrant no further discussion. [Doc. 32, pp. 5–6]; *see* n.5, *supra*.

is out of breath. If the either the MCS-90 From or the Georgia Motor Carrier Act (but not both) apply to this case, they will erase the Unlisted Driver Exclusion and the Radius Exclusion from the policy. *See Aequicap Ins. Co. v. Canal Ins. Co.*, 693 S.E.2d 863, 865, 867–68 (Ga. Ct. App. 2010); *Sapp*, 706 S.E.2d at 649 ("The radius-of-use limitation, which purports to exclude from coverage any incident occurring more than 50 miles from Tifton, Georgia, is such a provision and is, therefore, unenforceable.").

### C.    Conclusion

Based on all the foregoing, the Court **GRANTS in part** and **DENIES in part** United Specialty's Motion for Reconsideration [Doc. 32]. In sum, United Specialty owes Defendant Alra Logistics, LLC a defense, but it doesn't have to defend Defendant Xavier Gerard Downer any longer. As the Court addressed in its summary-judgment order, Alra Logistics and Downer have default judgments entered against them, but only with respect to the factual allegations from United Specialty's Complaint. [Doc. 30, p. 6 n.2]; *see also* [Doc. 16]; [Doc. 21]. Based on the Court's ruling above and those that remain in place via its summary-judgment order as well as the fact that United Specialty moved for reconsideration in lieu of offering a direct response to the Court's show-cause order, the Court **DIRECTS** the Clerk of Court to **ENTER** Judgment, pursuant to Federal Rule of Civil Procedure 56(f)(1), as follows:

- against United Specialty Insurance Company and in favor of Defendants Jamela Smith and Alra Logistics, LLC, and

- against Defendant Xavier Gerard Downer and in favor of United Specialty

  Insurance Company.

  **SO ORDERED**, this 28th day of June, 2024.

  <u>*S/ Tilman E. Self, III*</u>
  **TILMAN E. SELF, III, JUDGE**
  **UNITED STATES DISTRICT COURT**